THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PHYLLIS HOUSTON, Defendant-Appellant.

Fourth District    No. 4—95—0557

Opinion filed April 29, 1997.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Following a jury trial, defendant Phyllis Houston, née Phyllis Hoback, was found guilty of eight counts of telephone fraud (720 ILCS 365/1(g) (West 1992)) and sentenced to 18 months of conditional discharge. She was ordered to pay restitution of $5,035.06 "to be determined." Defendant appeals, contending that (1) the trial court erred in admitting evidence that defendant applied for phone service in 1989 under the name of "John Houston," where this prior "bad act" was not probative regarding her present offenses; (2) the trial court erred in admitting as business records GTE reports that were generated in preparation for trial; (3) she was not proved guilty beyond a reasonable doubt; and (4) the restitution order must be vacated, because it failed to specify the time and method of repayment. We affirm in part, reverse in part, vacate in part, and remand.

In counts I through IV, defendant was charged with obtaining telephone service from GTE "by using the name of Phyllis Hoback as the party to be billed, knowing that service under the name of Phyllis Houston would be refused." Each of the four months that defendant allegedly received telephone service as Phyllis Hoback (December 1992 through March 1993) was charged as a separate count. In counts V through VIII, defendant was charged with obtaining telephone service "by using the name of Troy Huston [*sic*], a minor under the age of 17, as the party to be billed, knowing that service under the name of Phyllis Houston would be refused." Troy Houston, whose last name is spelled with two o's, is one of defendant's sons. Each month of service received in Troy's name, from May 1993 to August 1993, was charged as a separate count.

Prior to trial, defendant filed a motion *in limine* to preclude evidence that she applied in 1989 for phone service under the name of John Houston. Defendant's motion was denied.

At trial, Robert Hanner, an investigator employed in GTE's security department, was the State's sole witness. Hanner began investigating defendant in August 1993 after GTE's billing center sent him records of three unpaid accounts in the names of John Houston, Phyllis Hoback, and Troy Huston. In October 1993, Hanner and another GTE investigator interviewed defendant at her residence. They obtained a written statement from defendant, which was entered into evidence.

In the statement, defendant related that in 1978, she and her family had resided on Center Street in Bloomington, Illinois. Their telephone service at this address was under her husband's name, Roy Houston, Sr. (Roy Sr.). The service was disconnected for nonpayment of bills. In 1989, the family moved to Anchor, Illinois. Defendant's husband instructed defendant to apply for telephone service using the name "John Houston." Defendant and Roy Sr. have a son named John (or Jonathan) Houston, who was 16 years old at the time. Roy Sr. told defendant that he was unable to obtain telephone service in his own name because of his bad debt with GTE. He threatened defendant and her children with bodily harm unless she applied to GTE. She complied. The John Houston account was disconnected in fall 1992 with an unpaid balance of $6,712.73.

In November 1992, shortly after her divorce from Roy Sr., defendant and her children moved to 202 South Prospect, Apartment 105K, Bloomington, Illinois. Defendant applied for telephone service at this address using her maiden name, Phyllis Hoback. She wrote, "[w]hen I applied for the telephone in my maiden name, I showed the GTE representative my divorce decree, where I took my maiden name

back." The Phyllis Hoback account was disconnected for nonpayment of $2,310.83. Telephone service was reinstated at defendant's address under the name of Troy Houston. Defendant wrote, "I would state that my son Troy applied for the telephone service in his name without my knowledge." The Troy Houston (or "Huston") account was disconnected in August 1993 with an unpaid balance of $2,724.20.

Defendant signed her statement "Phyllis S. Hoback Houston." After signing, defendant offered to pay Hanner $3,000 to settle the accounts. Hanner refused.

Hanner testified that when a potential customer applies for telephone service, GTE runs the customer's name, social security number and prior address through a computer system called the "Recoup." If the Recoup does not reveal a bad debt, GTE will go ahead and establish service. GTE does not ask applicants their age. Hanner assumed that defendant applied for service over the telephone. However, on cross-examination he admitted that he was not present when the applications were made, and he did not know whether the applications were made in person or over the telephone.

Over defendant's objection, the State introduced computer records of the John Houston, Phyllis Hoback, and Troy Huston accounts. These records were generated between August 1993 and October 1993 by Hanner during the course of his investigation. The records indicated that a large number of phone calls were made on the Phyllis Hoback and Troy Huston accounts. One printout showed that the John Houston account was delinquent $6,712.73. According to another printout dated September 17, 1993, the Phyllis Hoback account was delinquent $2,250.83, but someone had handwritten $2,310.83 beneath the first figure. The Troy Huston account was delinquent $2,724.20 as of September 9, 1993, and $2,922.98 as of September 19, 1993. One-time payments of $600 and $200 were credited to the Phyllis Hoback and the Troy Huston accounts, respectively. No other payments were listed.

Defendant testified that her name was Phyllis Suzanne Houston Hoback. She was married to Roy Sr. from 1970 to 1992. She stated that her former husband had constantly threatened and abused her and the children. In 1989, he threatened to kill her if she did not apply for telephone service in the name of John Houston, their son. He was arrested for molesting the children in July 1991 or 1992, and he was currently serving a 48-year prison sentence. Following her divorce, defendant moved to the Prospect Road address in Bloomington, but her former husband continued to terrorize her. She lived with her children, Roy Jr., Troy, Channelle, and Jeremiah, plus "three or four other kids that the kids had brought in."

In November 1992, defendant applied for telephone service in her maiden name for her Bloomington residence. She explained, "I went down to the telephone company with my divorce papers and said this is my name. I have just moved from Route 1, Anchor. And I am afraid because [my ex-husband] is still trying to kill me and the kids, and I want the phone service in my maiden name so he can't find us[.]" In addition to the divorce papers, defendant showed the GTE representative her birth certificate, which confirmed that her maiden name was Phyllis Suzanne Hoback. Defendant explained that she did not believe her ex-husband was smart enough to look for her under her maiden name. GTE records reveal that the Phyllis Hoback account was for an unlisted telephone number.

Defendant stated she had financial problems following her divorce. She had sold her farm, but the proceeds were placed in trust and unavailable to her. She was living on $400 a month, and she was unable to pay her bills. She did not know when the Phyllis Hoback account was disconnected. Nor did she know who reconnected telephone service in Troy Huston's name, at least not until after she spoke with Hanner. She explained, "I think I was having a nervous breakdown at the time. I would get the mail out of the mailbox and throw it in the dish. I wouldn't look at it."

Jonathan Houston and Troy Houston confirmed that their father was physically and verbally abusive. Neither Jonathan nor Troy applied for telephone service in his own name.

Roy Jr., defendant's 20-year-old son, testified that he moved in with his girlfriend after his parents' divorce, but he stayed at defendant's Prospect Street address four or five times a week. At the time of trial, Roy Jr. was serving prison sentences for burglary, forgery, and aggravated criminal sexual abuse. Roy Jr. stated that he was the one who applied for the Troy Houston account. "I walked into GTE Phone Mart and told them I wanted a telephone, and they said okay." He applied under his brother's name "[b]ecause I had let my girlfriend put a phone in my name and she ran the bill up outrageously and I never paid it." Roy Jr. did not tell his mother what he had done.

In rebuttal, Hanner claimed that the GTE Phone Mart would have required identification, such as a driver's license or state identification card, before accepting an application. Roy Jr. did not resemble Troy. Hanner admitted, however, that he did not know whether the GTE representative followed the proper application procedure.

Defendant first contends that the trial court erred in admitting evidence that she applied for phone service in 1989 under John

Houston's name. She argues that this evidence was not probative of the charged offense, which involved telephone service in 1992 to 1993, and it served only to portray her as an inveterate abuser of telephone service. We disagree.

■ Evidence of uncharged offenses or bad acts is not admissible to show a defendant's propensity to commit crime. *People v. Illgen*, 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519 (1991). Such evidence is admissible, however, if it is relevant for any purpose other than to show the propensity to commit crime. *Illgen*, 145 Ill. 2d at 365, 583 N.E.2d at 519. When evidence of other crimes is offered, the trial court must weigh its probative value against its prejudicial effect and may exclude the evidence if its prejudicial effect substantially outweighs its probative value. *People v. Stewart*, 105 Ill. 2d 22, 62, 473 N.E.2d 840, 860 (1984). The trial court's ruling as to the admissibility of such evidence will not be reversed absent an abuse of discretion. *People v. Oaks*, 169 Ill. 2d 409, 454, 662 N.E.2d 1328, 1348 (1996).

■ Here, evidence that defendant applied for telephone service under the name John Houston was admissible to show her intent. Where evidence of a defendant's involvement in another offense is offered to prove the absence of an innocent frame of mind or the presence of criminal intent, mere general areas of similarity between the two offenses will suffice for the evidence's admission. *Oaks*, 169 Ill. 2d at 454, 662 N.E.2d at 1348. The evidence revealed defendant knew that GTE kept a bad debt file, those named in the file would be refused service, and it was possible for a debtor to obtain telephone service by applying under the name of a child. Intent is notoriously difficult to establish through direct evidence. Defendant's past dealings with GTE provided the best circumstantial evidence of her intent to defraud and, thus, the evidence was highly probative. We note that defendant made no attempt to limit the prejudicial effect of the evidence by requesting that the jury be instructed that the evidence was being received for a limited purpose. The trial court did not abuse its discretion in admitting the evidence.

■ Defendant next contends that GTE's computer records were generated in anticipation of litigation and, thus, the trial court erred in admitting the records under the business records exception to the hearsay rule. Section 115—5(a) of the Code of Criminal Procedure of 1963 (Code) provides for the introduction into evidence of records "made in regular course of any business *** if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter." 725 ILCS 5/115—5(a) (West 1992). In contrast, records are inadmissible if they were "made by anyone during an

investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind." 725 ILCS 5/115—5(c)(2) (West 1992).

■ At trial, defendant did not object to GTE's computer records on the grounds that they were generated during an investigation in anticipation of litigation. Instead, defendant objected that the State failed to establish an adequate foundation supporting the reliability of the records, an argument defendant has abandoned on appeal. Moreover, defendant did not object to the computer records in her post-trial motion. "*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). The issue is therefore waived on appeal.

■ Regardless, we find that the records were properly admitted, even though they were *retrieved* during a criminal investigation. Tangible printouts of "computer-stored" data are admissible under the business records exception to the hearsay rule if (1) the electronic computing equipment is recognized as standard, (2) the input is entered in the regular course of business reasonably close in time to the happening of the event recorded, and (3) the foundation testimony establishes that the sources of information, method and time of preparation indicate its trustworthiness and justify its admission. *People v. Bynum*, 257 Ill. App. 3d 502, 512, 629 N.E.2d 724, 731 (1994). Here, however, the bulk of the billing data was generated instantaneously by the computer when telephone calls were placed from defendant's accounts. It was not entered by a human declarant. "Computer-generated" records are admissible under a lesser standard. All that must be shown is that the recording device was accurate and operating properly when the evidence was generated. *Bynum*, 257 Ill. App. 3d at 513, 629 N.E.2d at 731; *People v. Holowko*, 109 Ill. 2d 187, 192, 486 N.E.2d 877, 879 (1985); see also *People v. Casey*, 225 Ill. App. 3d 82, 88-89, 587 N.E.2d 511, 514-15 (1992) (contrasting "computer-stored" data with "computer-generated" data). Defendant does not contest the accuracy of GTE's billing computer.

Accurate computer data does not become inadmissible simply because it was retrieved in anticipation of litigation, any more than a ledger ceases to be a business record when it is brought into the courtroom. "But if the retrieval *process* is designed from a litigant's various sources of information and purposeful selection that cannot be independently reviewed by the defense," then the retrieved material may be challenged as being prepared in anticipation of litigation. (Emphasis in original.) *Casey*, 225 Ill. App. 3d at 90, 587 N.E.2d at

515. Here, there was no "purposeful selection." The computer's billing records were simply downloaded in an unaltered form.

■ As noted above, the bulk of the billing records were generated contemporaneously when the telephone calls were placed, prior to the commencement of any criminal investigation. On one printout, the phrases "SS # NOT FOR PHYLLIS—REAL NAME PHYLLIS HOUSTON" and "SS # NOT FOR PHYLLIS—REAL NAME PHYLLIS HOUSTON—SUSAN HOUSTON" and "PLS VERIFY LAST NM ON DL#—NOT FOR A HOBACK" each appeared twice. It is unclear when or by whom these comments were entered into GTE's computer. Had defendant specifically objected to these comments, it might have been proper to excise them from the other, properly admissible, records. Defendant did not do so, and we decline to find error. Defendant also contends the reports were irrelevant. We disagree. The billing reports established that defendant obtained telephone service, a necessary element of the offense. The reports also revealed that an excessive number of telephone calls were placed from defendant's address, a fact defendant would likely have been aware of. This provided some evidence of defendant's intent to defraud.

■ Defendant argues the State failed to prove beyond a reasonable doubt that she fraudulently obtained telephone service. We agree that the State failed to prove counts I through IV, but we affirm defendant's conviction for count V. Defendant was convicted of violating section 1(g) of the Telephone Charge Fraud Act (Act), which provides as follows:

> "Any individual, corporation, or other person, who, with intent to defraud or to aid and abet another to defraud any individual, corporation, or other person, of the lawful charge, in whole or in part, for any telecommunications service, shall obtain, or attempt to obtain, or aid and abet another to obtain or to attempt to obtain, any telecommunications service:
>
> * * *
>
> (g) by any other trick, stratagem, impersonation, false pretense, false representation, false statement, contrivance, device, or means, shall be deemed guilty of a Class A Misdemeanor." 720 ILCS 365/1(g) (West 1992).

■ When a challenge to the sufficiency of the evidence is raised on appeal, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the necessary elements of the crime beyond a reasonable doubt. *People v. Burrows*, 148 Ill. 2d 196, 225, 592 N.E.2d 997, 1009 (1992), citing *Jackson v. Virginia*, 443 U.S. 307, 319,

61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Neither case law nor the parties discuss what elements are necessary to establish a violation of section 1(g) of the Act. Our research reveals but a single case involving the Act, *People v. Smith*, 72 Ill. App. 3d 956, 390 N.E.2d 1356 (1979), and the facts of *Smith* are inapposite to the present case. In *Smith*, the defendant violated section 15c(c) of an earlier version of the Act by using a "blue box" electronic device to avoid long-distance tolls. *Smith*, 72 Ill. App. 3d at 965, 390 N.E.2d at 1363; Ill. Rev. Stat. 1973, ch. 134, par. 15c(c).

■ To establish a violation of section 1(g) of the Act, the State must prove that a defendant (1) obtained or attempted to obtain telecommunications service, (2) with intent to defraud the telecommunications service provider of its full lawful charge, and (3) by any "trick, stratagem, false pretense, false representation, false statement, contrivance, device, or means." 720 ILCS 365/1(g) (West 1992). The third element requires some interpretation. Several terms, all connoting deception, are listed in the disjunctive. After listing synonyms for deception, section 1(g) forbids telephone fraud by any other "means." 720 ILCS 365/1(g) (West 1992). Under the rule of *ejusdem generis*, when general words follow specific words in a statute, the general words must be construed to include only things of the same kind as those indicated by the specific words. *Bonfield v. Jordan*, 202 Ill. App. 3d 638, 645, 560 N.E.2d 412, 416-17 (1990). "[A]ny other *** means" (720 ILCS 365/1(g) (West 1992)) must therefore refer to any *deceptive* means. Like more traditional forms of fraud, violations of section 1(g) of the Act require a false representation of material fact. See, *e.g., People v. Yarbrough*, 128 Ill. 2d 460, 473, 539 N.E.2d 1228, 1234 (1989).

■ Here, the State alleged that defendant twice misrepresented her name to GTE, knowing that GTE would refuse her telephone service if it was aware of her true identity. If proved, these two material misrepresentations would support convictions for two counts of telephone fraud. However, the State charged defendant with a separate count for each month she received telephone service, and defendant was convicted of eight counts of telephone fraud. The State apparently charged each month of service as a separate count because GTE chooses to bill its customers on a month-to-month basis. Neither defendant nor the State addresses whether eight convictions for telephone fraud can be premised on only two fraudulent misrepresentations. We hold that they cannot. The statute's use of the word "obtain" implies that the crime is completed when a defendant establishes or attempts to establish access to telecommunications service. The making of each call once telephone service has been

fraudulently obtained does not constitute a new offense, unless the defendant commits some fresh fraud. We note that the legislature has amended the Act, effective January 1, 1994, to provide that the defrauding of services in excess of $300 is a Class 4 felony. 720 ILCS 365/1(g) (West 1994); Pub. Act 88—75, § 15 (eff. January 1, 1994) (1993 Ill. Laws 1066, 1069). This further suggests that multiple uses of fraudulently obtained telephone service should be counted as a single crime, since rarely will a single telephone call result in charges in excess of $300.

In counts I through IV, defendant was charged with fraudulently obtaining telephone service under her maiden name. Defendant consistently maintained she applied for phone service in her maiden name, Phyllis Suzanne Hoback, after showing GTE her birth certificate and divorce decree. Defendant further stated that her maiden name was restored after her divorce. It appears defendant is inconsistent in the use of her maiden name. She signed her statement "Phyllis S. Hoback Houston," but she testified that her name was "Phyllis Suzanne Houston Hoback." Defendant's use of her maiden name, even if that name is now her legal name, could support a conviction for telephone fraud, if defendant was concealing her "true" identity. However, there is no evidence any deception occurred, because defendant supplied GTE with enough information that it was or should have been aware of her identity. Hanner testified GTE would have obtained defendant's social security number at the time she applied for service. GTE's billing records confirm that GTE knew both defendant's social security number and driver's license number. We therefore reverse defendant's convictions for counts I through IV.

In counts V through VIII, defendant was charged with fraudulently obtaining telephone service in May 1993 under the name of Troy Huston. Defendant contends there is no evidence that she was the person who applied in Troy's name. Roy Jr. testified that he was responsible for that act. Nevertheless, we find that a rational jury could infer that defendant made the application. Defendant was the sole adult residing full-time at the address. She admitted she used the telephone regularly, but she claimed not to know her telephone was disconnected on May 5, 1993, and remained disconnected until May 18, 1993, despite the enormous number of telephone calls placed from her residence. She received telephone bills in Troy's name, but never questioned those bills. She had applied for telephone service under a different son's name once before. The jury was not required to believe Roy Jr., a convicted felon serving time in prison, when he claimed to be the person who applied for telephone service.

We therefore affirm defendant's conviction for count V. However, as discussed above, we hold that defendant's single fraudulent application cannot support convictions for four counts of telephone fraud. We vacate defendant's convictions for counts VI through VIII.

Because we are reversing (counts I through IV) or vacating (counts VI through VIII) all but one (count V) of defendant's convictions, and because she received a single sentence on all eight counts, we remand for resentencing. On remand, the circuit court should determine a payment schedule as part of its order of restitution. See 730 ILCS 5/5—5—6(f) (West 1992).

Affirmed in part, reversed in part, and vacated in part; cause remanded.

STEIGMANN, P.J., and McCULLOUGH, J., concur.