*In re* MARRIAGE OF MARK DeLARCO, Petitioner-Appellant, and ELIZABETH DeLARCO, Respondent-Appellee.

Second District    No. 2—98—1469

Opinion filed May 5, 2000.

M. Anita Donath, of Naperville, for appellant.

Wayne M. Kwiat, Sr., of Bolingbrook, for appellee.

JUSTICE GALASSO delivered the opinion of the court:

The petitioner, Mark DeLarco (Mark), appeals from that portion of the judgment for dissolution of his marriage to the respondent, Elizabeth DeLarco (Elizabeth), ordering him to contribute the sum of $19,000 to Elizabeth's attorney fees. On appeal, Mark raises the following issues: (1) whether the trial court's finding that Mark had paid his attorney the sum of $18,957.84 was against the manifest weight of the evidence; (2) whether the trial court abused its discretion when it ordered Mark to contribute the sum of $19,000 to Elizabeth's attorney fees; and (3) whether the trial court erred in admitting into evidence Elizabeth's attorney's computerized billing records.

■ After the filing of the briefs in this case, Mark filed a motion to strike a portion of Elizabeth's appellee's brief on the basis that it raises a new issue and that Elizabeth has not filed a cross-appeal from the judgment. We ordered the motion taken with the case.

An appellee need not file a cross-appeal to preserve an argument ruled on adversely to the appellee in the trial court if the judgment of the trial court was not, at least in part, against him. *Stratman v. Brent*, 291 Ill. App. 3d 123, 133 (1997). As no part of the judgment was against Elizabeth, we may consider the merits of the issue she raises. Therefore, the motion to strike is denied.

By way of background, Mark and Elizabeth were married on June 18, 1983. Mark is a high school graduate with some college credit hours. Since 1985, he has been employed at the College of Du Page as a programer. He is paid a biweekly gross salary of $2,397.60. Elizabeth is a college graduate. At the time of the marriage, she worked as a secretary and receptionist and later worked temporary jobs. At the time of trial, she was employed by an insurance company and received a biweekly gross salary of $965.13. In 1987, the parties purchased a house in Glen Ellyn, at which time Elizabeth stopped working outside the home. Later she worked for Mark's father's company, managing the office. In 1994, Elizabeth entered a drug rehabilitation program. In November 1994, following Elizabeth's release from treatment, Mark moved out of the marital residence at Elizabeth's request. On May 1, 1996, Mark filed his petition for the dissolution of the parties' marriage.

During their separation, Mark had contributed to Elizabeth's support. In July 1996, following the filing of his petition for dissolution of marriage, Mark was ordered to pay the sum of $1,500 per month to

Elizabeth for temporary support. The trial in this case was heard in May 1998, and the hearing on Elizabeth's petition for contribution to her attorney fees was held in August 1998.

At trial, Mark testified that his payments to his attorney came from his First Chicago bank account. Elizabeth testified that she paid her attorney fees from a joint account she had with her father. The account was funded by her father; she did not deposit any funds into that account. She only used the money to pay attorney fees. She also testified that she had an obligation to repay her father, although she had not written any notes to her father to evidence the debt. Later, at the hearing on her petition for contribution to her attorney fees, Elizabeth testified that, since trial, she had borrowed the sum of $9,500 for the payment of her attorney fees. On cross-examination, she acknowledged that she did not sign a note for the above sum.

■ Mark contends, first, that the trial court's finding that he paid his attorney $18,957.84 was against the manifest weight of the evidence. We agree.

The evidence of Mark's payments to his attorney came from two sources, namely, Mark's testimony and his bank statements. At trial, Mark testified that he had paid his attorney $11,402.80 as of March 1998 and had, subsequent to that date, made two payments to her of between $220 and $250. He had also paid an expert witness $1,029.50. However, he also testified that his bank statements reflected all of the attorney fees and related expenses he had paid. His checking account statements indicated that as of March 5, 1998, he had paid $10,627.80 to his attorney. Adding in the additional payments totaling at most $500, brought the amount to $11,127.80. Elizabeth testified that, as of April 5, 1998, she had made payments to her attorney totaling $18,957.84. That same figure was set forth on Elizabeth's closing argument summary, which was dated May 8, 1998. During the hearing on attorney fees the trial court stated as follows:

> "[Mark] has testified that he has spent 18,000 some dollars from the marital estate, and I can give you the exact figure from his own testimony and records that he spent."

It is clear from the evidence at trial that the most Mark paid to his attorney for fees, excluding the expert witness's fees, was $11,902.80 and not the "18,000 some dollars" as found by the trial court. Therefore, we agree with Mark that the trial court's finding that he paid his attorney $18,957.84 was against the manifest weight of the evidence.

■ Mark contends, next, that the trial court abused its discretion in ordering him to contribute $19,000 in attorney fees to Elizabeth, since Elizabeth was only personally liable for the balance due to her

attorney of $776.65. There is no dispute that Elizabeth had been paying her attorney during these proceedings and that, as of August 11, 1998, the remaining balance due from Elizabeth to her attorney was $776.65.

Mark relies on *In re Marriage of Magnuson*, 156 Ill. App. 3d 691 (1987). In that case, the wife and her attorney entered into an agreement whereby the wife's obligation to pay attorney fees was limited to $10,000. The wife's amended petition for attorney fees alleged that she had paid her attorney $11,750.45 and owed him an additional $14,542.50. The trial court ordered the husband to pay $8,500 to the attorney for fees.

This court reversed the order for the payment of attorney fees. The case turned on whether the wife "necessarily incurred" the attorney fees as required under section 508 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/508 (West 1996)). This court concluded that "necessarily incurred" requires that the spouse be personally liable for such fees before the other spouse can be required to pay them. Because the wife's liability was limited to $10,000, she could not be said to have incurred fees in any amount exceeding the $10,000 for which she could be held liable under the contract with her attorney. *Magnuson*, 156 Ill. App. 3d at 702.

We agree with Elizabeth that *Magnuson* is distinguishable because the evidence showed that the wife in that case was personally liable for her attorney fees.

A court of review should not second-guess the trial court's factual findings on the validity of a debt when that finding is based upon the trial court's assessment of the credibility of the witnesses and the weight it gives to their testimony, unless the trial court's findings are against the manifest weight of the evidence. *In re Marriage of Blazis*, 261 Ill. App. 3d 855, 869 (1994).

Elizabeth's testimony that she was obligated to repay her father the funds with which she paid her attorney fees was uncontradicted by Mark. In its letter opinion, the trial court stated that there was no evidence of debt except for the mortgage on the marital residence and the loans from Elizabeth's father, and the trial court ordered that Elizabeth be solely responsible for any debt owed to her father. Therefore, we conclude that Elizabeth was personally liable for all of her attorney fees.

Next, Mark contends that the trial court erred in ordering him to contribute $19,000 to Elizabeth's attorney fees since she failed to demonstrate an inability to pay her fees. Mark points out that Elizabeth paid her attorney fees with funds she received from her father. He also argues that the amount of the fees he was ordered to pay is

unreasonable, given that the parties have no children and the marital estate consisted mainly of a house and a pension plan.

The allowance of attorney fees and the amount awarded are matters within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *In re Marriage of Waltrip*, 216 Ill. App. 3d 776, 781 (1991). Where the basis of the award is statutory, as it is in this case, the trial court is bound by the statutory grant. *Waltrip*, 216 Ill. App. 3d at 781. Pursuant to section 508 of the Act, however, the trial court may, in its discretion and after consideration of the financial resources of the parties, order one spouse to pay all or part of the other's attorney fees arising out of the dissolution proceedings. *In re Marriage of Minear*, 287 Ill. App. 3d 1073, 1084 (1997), *aff'd*, 181 Ill. 2d 552 (1998); see 750 ILCS 5/508(a) (West 1996). In making an award pursuant to a party's petition for contribution to fees and costs, the trial court must base the award on the criteria for the division of marital property set forth in section 503 of the Act (750 ILCS 5/503(d) (West 1996)) and, if maintenance has been awarded, the criteria for an award of maintenance set forth in section 504 of the Act (750 ILCS 5/504(a) (West 1996)). 750 ILCS 5/503(j)(2) (West 1996).

In its letter opinion in this case, the trial court made the following determinations:

"4. The Court, after considering all the statutory factors and considering that [Mark] used marital funds to pay his various attorneys and experts (the sum of $18,975.84), orders [Mark] contribute the sum of $19,000 towards the attorney fees incurred by [Elizabeth]. The funds in the joint account with [Elizabeth] and her father, were at best non-marital property. That determination is based on a presumption of a gift of one-half of this joint account. It doesn't change the fact that [Mark] used marital funds to pay his attorney which depleted the marital estate by the sums he paid his attorney.

5. The Court finds after considering all the evidence that no dissipation has been committed by [Mark]. The Court finds that the alleged dissipation of funds was not proven at trial. The Court finds that [Mark] used the funds to pay his attorney and expert fees. Since the Court has ordered [Mark] to pay some of [Elizabeth's] fees, the Court has already compensated [Elizabeth] for [Mark's] use of marital funds."

Apart from the contribution from Mark to Elizabeth's attorney fees, both parties were ordered to pay their own attorney fees.

Despite its statement that it found no dissipation on Mark's part, it is clear that the trial court ordered Mark to make the $19,000 contribution to Elizabeth's attorney fees in order to repay the marital estate for Mark's use of marital assets to pay his attorney fees.

The doctrine of dissipation applies to allegedly improper expenditures of marital funds for purposes unrelated to the marriage, at a time after the marriage has irretrievably or irreconcilably broken down. *In re Marriage of Toole*, 273 Ill. App. 3d 607, 615 (1995). Expenditures for attorney fees out of marital assets are a dissipation of marital assets. *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 464 (1994). Under the recently enacted section 501(c—1) of the Act (Pub. Act 89—712, § 5, eff. June 1, 1997), however, payments made by the parties to their respective attorneys are considered advances from the marital estate. 750 ILCS 5/501(c—1)(2) (West 1996).

Because the trial court erred in the amount of fees it found that Mark had paid to his attorney, we conclude that this cause must be remanded to the trial court for a redetermination of that amount. The amount of those fees shall be considered an advance to Mark against his share of the marital estate. The trial court must then reconsider its division of the martial property in light of that advance.

Elizabeth argues that, while the trial court may have erred in the amount of money it believed that Mark paid to his attorney, nevertheless, the trial court was not required to award the same amount from Mark to Elizabeth for attorney fees as Mark paid to his own attorney. However, it is clear from the trial court's statements, both at the hearing on the contribution to attorney fees and in its letter opinion, that it used the amount of fees Mark paid to his attorney to determine the contribution amount to Elizabeth. Moreover, the trial court simply awarded the same amount of fees to Elizabeth without first determining the amount of attorney fees Mark paid, treating that amount as an advance against the marital estate when making its award of the marital property, and then making a determination as to whether there should be a contribution to Elizabeth's attorney fees in light of the criteria set forth in sections 503 and 504 of the Act.

We note also that, while Elizabeth's total attorney fee bill was approximately $28,000, the trial court only awarded a contribution from Mark in an amount equivalent to what the trial court believed he paid his attorney. As it is impossible to state with any assurance whether, had the trial court used the correct figure and the procedure outlined above, it would not have awarded any additional attorney fees, we also remand this cause for a new hearing on Elizabeth's petition for contribution to her attorney fees, consistent with the views expressed herein.

Because we are remanding this cause for further proceedings, we wish to correct a misapprehension held by the trial court in this case as to the applicability of the provisions of section 501(c—1) to a final hearing on fees. 750 ILCS 5/501(c—1) (West 1996). From the trial court's remarks at the hearing on Elizabeth's contribution petition, it

appears that it believed that section 501(c—1) required it to "equalize" fees at the contribution fee hearing.

The "equalization" factor of section 501(c—1) applies only to attorney fees and costs awarded during the period while the litigation is pending. See 750 ILCS 5/501(c—1) (West 1996). In enacting section 501(c—1), the legislature's goal was to level the playing field by equalizing the parties' litigation resources. *Kaufman, Litwin & Feinstein v. Edgar*, 301 Ill. App. 3d 826, 836 (1998). Section 501(c—1)(2) provides that interim fees may be deemed ultimately to have been advances from the parties' marital estate and any portion of any interim award constituting overpayment shall be remitted back to the appropriate party or parties or to successor counsel as the court determines after giving notice. 750 ILCS 5/501(c—1)(2) (West 1996). However, nothing in section 501(c—1) or in section 503, 504, or 508 requires the trial court to "equalize" fees in a contribution fee hearing.

Inasmuch as there will be a new hearing on Elizabeth's petition for contribution to her attorney fees, we do not reach the issues Mark raises as to whether Elizabeth proved an inability to pay her own attorney fees and the reasonableness of the amount of attorney fees he was ordered to contribute to Elizabeth in this case. In an effort to provide guidance to the trial court, we note that, pursuant to section 503(j)(2), the trial court may consider the relevant economic circumstances of the parties in ruling on a contribution petition. 750 ILCS 5/503(d)(5), (j)(2) (West 1996). We further note that the reasonableness of the attorney fees charged by the petitioning party's attorney is not a factor listed in either section 503 or section 504.

Prior to the 1997 amendments, section 508 of the Act governed the award of attorney fees and final fee petitions (*i.e.*, whether attorney fees are reasonable and necessary) in dissolution cases. *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 477 (1999); 750 ILCS 5/508 (West 1992). Under the former provisions of section 508(a), the court, after due notice and hearing and after considering the financial resources of the parties, could enter an order requiring any party to pay a *reasonable* amount for his own costs and attorney fees and for the costs and attorney fees necessarily incurred by the opposing party. *McGuire*, 305 Ill. App. 3d at 477; 750 ILCS 5/508(a) (West 1992). The amended section 508(a) still requires that the amount of attorney fees a party is ordered to pay for his own or the other party's attorney be reasonable. See 750 ILCS 5/508(a) (West 1996).

The amendments to section 508(a) and the addition of section 503(j), which governs petitions for contributions, do not constitute substantive changes. Rather, they alter the procedures by which issues regarding attorney fees are presented and heard in dissolution cases.

*McGuire*, 305 Ill. App. 3d at 478. Judicial discretion in the determination of where and how much to award as attorney fees was neither eliminated nor diluted by these amendments. *McGuire*, 305 Ill. App. 3d at 478.

We conclude, therefore, pursuant to section 508(a), from which the right to attorney fees originates, in making an award of attorney fees pursuant to a petition for contribution to attorney fees, the trial court must also consider whether the attorney fees charged by the petitioning party's attorney are reasonable. Section 503(j)(4) (750 ILCS 5/503(j)(4) (West 1996)) states:

> "(4) No finding on which a contribution award is based or denied shall be asserted against counsel or former counsel for purposes of any hearing under subsection (c) or (e) of Section 508."

Accordingly, a finding of reasonableness or unreasonableness may not be asserted against the attorney in a hearing for attorney fees from either a client or a former client.

■ In addition, because we are remanding this cause in part for a new hearing on Elizabeth's petition for contribution to her attorney fees and costs, we will address the issue Mark raises as to the admissibility of the computerized billing records of Elizabeth's attorney. Mark contends that there was no proper foundation for the admission of Elizabeth's attorney's computerized billing records. He argues that the billing records were replete with errors and were untrustworthy.

To begin, we note that there is a distinction between computer-generated records and computer-stored records. Records directly generated by the computer itself are generally admissible as representing the tangible result of the computer's internal operations. See *People v. Houston*, 288 Ill. App. 3d 90, 98 (1997) (bulk of billing data was generated instantaneously by the computer when telephone calls were placed from the defendant's accounts). All that need be shown is that the recording device was accurate and operated properly when the evidence was generated. *Houston*, 288 Ill. App. 3d at 98. In contrast to computer-generated records, printouts of computer-stored data constitute statements placed into the computer by out-of-court declarants and cannot be tested by cross-examination. *People v. Rushton*, 254 Ill. App. 3d 156, 168 (1993). Such information therefore should not be admissible absent an exception to the hearsay rule. *Rushton*, 254 Ill. App. 3d at 168. Tangible printouts of computer-stored data are admissible under the business exception to the hearsay rule if (1) the electronic computing equipment is recognized as standard, (2) the input is entered in the regular course of business reasonably close in time to the happening of the event recorded, and (3) the foundation testimony establishes that the sources of information, method and

time of preparation indicate its trustworthiness and justify its admission. *Houston*, 288 Ill. App. 3d at 98.

At the hearing on Elizabeth's petition for contribution to her attorney fees, William Stogsdill, Elizabeth's attorney, testified that his firm's billing records in this case were produced by computer software known as "Time Slips," which is used by other attorneys in the legal community. Mr. Stogsdill explained that, on a daily and weekly basis, time slips, which are prepared by the various attorneys working on the file contemporaneously with the work done, are put into the computer. On a monthly basis, the slips are calculated, and the computer produces a billing summary and an itemized bill for the client.

On cross-examination, Mr. Stogsdill testified that he reviews the computer records and the bills from the other attorneys in his firm for accuracy. A member of his clerical staff actually enters the information from the attorneys' time slips into the computer. The original time slips are unavailable as they are not maintained in a file, although some are boxed up. Mr. Stogsdill acknowledged that there were some mistakes on the billing summaries in that some of the entries did not correspond to the present case but that these did not affect the amount due. He also acknowledged that, after his initial affidavit, he discovered that an error occurred in the amount of time expended. His supplemental affidavit reflected the correction. On redirect examination, Mr. Stogsdill produced certain time slips to illustrate the similarities between the time slips and the billing summaries.

We believe that the procedures testified to by Mr. Stogsdill regarding the production of the billing summaries satisfy the foundational requirement for the admission of the computer-stored billing records. There is nothing inherently untrustworthy about the procedures testified to by Mr. Stogsdill. The fact that errors did occur goes to the weight, not the admissibility, of the computer-stored billing record. See 145 Ill. 2d R. 236(a) ("All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility"). We find *Eastman v. Department of Public Aid*, 178 Ill. App. 3d 993 (1989), relied on by Mark, distinguishable from the present case. In *Eastman*, this court held that it was error to admit computer records in the absence of any foundational testimony to indicate their reliability. *Eastman*, 178 Ill. App. 3d at 998. In the present case, foundational testimony was presented by Mr. Stogsdill.

Mark then argues that it was error to admit the billing summaries without the original time slips.

Where a fact may be ascertained only by the inspection of a large

number of documents comprised of detailed statements, a summary of those documents may be received into evidence, but the mass of documents must be placed in the hands of the court or be made accessible to the opposing party for inspection. *Cole Taylor Bank v. Corrigan*, 230 Ill. App. 3d 122, 129 (1992) (bank officer's affidavit summarizing bank records insufficient where it did not show the officer's familiarity with the amounts disbursed or collected or provide the documents upon which he relied as to his conclusion as to the amount due). When original documents are voluminous and cannot be conveniently examined to extract the fact to be proved, any competent witness who had seen the original may testify to the fact, provided it is capable of being determined by calculation. *In re Estate of Savage*, 259 Ill. App. 3d 328, 333 (1994) (certified public accountant's summaries of decedent's bank records admissible where the actual bank records were present in court, the trial court checked the accuracy of the summaries, and the witness was questioned extensively regarding his compilation of the summaries).

We hold, therefore, in the case of computer-stored records, where the records sought to be admitted are summaries of original documents, such as the time slips in this case, the original documents must be in court or made available to the opposing party, and the party seeking the admission of the summaries must be able to provide the testimony of a competent witness or witnesses who have seen the original documents and can testify to the facts contained therein.

Finally, in her brief, Elizabeth argues that the trial court's failure to specifically designate which of the parties was to be responsible for the mortgage payments pending the sale of the marital residence was unfair and should be addressed. In light of the fact that we are remanding this cause, the trial court will have ample opportunity to clarify this issue.

Therefore, we reverse the judgment of the circuit court of Du Page County and remand the cause for the trial court to determine the amount of the advance against the marital estate based upon Mark's payment of his attorney fees with marital assets and, thereafter, to reconsider the division of the marital assets. The trial court shall then conduct a hearing on Elizabeth's petition for contribution to her attorney fees guided by the views expressed herein.

Reversed and remanded with directions.

THOMAS and HUTCHINSON, JJ., concur.