2015 IL App (1st) 143367

SIXTH DIVISION
Opinion Filed:   December 30, 2015

No. 1-14-3367

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MARIO ALIANO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 14 L 000366 |
| | ) | |
| SEARS, ROEBUCK AND CO., | ) | Honorable |
| | ) | Thomas More Donnelly, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Delort concurred in the judgment and opinion.

**OPINION**

¶ 1    Sears, Roebuck and Co. (Sears) appeals from a $3.10 judgment entered by the circuit court in favor of the plaintiff, Mario Aliano, on his claim brought pursuant to the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2008)) and the circuit court's subsequent award of $157,813.53 in attorney fees pursuant to section 10a(c) of the Consumer Fraud Act (815 ILCS 505/10a(c) (West 2008)).   For the reasons which follow, we affirm the $3.10 judgment entered in favor of the plaintiff, reverse the award of $157,813.53 in attorney fees, and remand the matter for further proceedings.

¶ 2    On April 23, 2009, the plaintiff filed a five-count class-action complaint, alleging, *inter alia,* that Sears wrongfully collected sales tax on the entire sale price of digital-to-analog television converter boxes (converter boxes), despite the fact that a portion of the retail price of the devices was subsidized by federally-funded coupons (NTIA Coupons) which are exempt from Illinois sales tax.   Although the complaint was amended several times, the matter proceeded on plaintiff's class-action claims until October 27, 2011, when he withdrew his motion for class certification, and the matter was transferred to the municipal department of the circuit court for further proceedings on the plaintiff's individual Consumer Fraud Act claim.

¶ 3    On January 10, 2013, the matter was tried, and on July 16, 2013, the circuit court issued a 17-page written order containing its findings of fact and conclusions of law and entering a judgment in favor of the plaintiff in the amount of $3.10.   On July 31, 2013, the plaintiff filed a fee petition seeking $252,402.08 in attorney fees and costs.   The circuit court conducted a hearing on the plaintiff's fee petition on September 4, 2014, and on October 6, 2014, entered an order awarding the plaintiff attorney fees in the amount of $157,813.53.   This appeal followed.

¶ 4    In urging reversal of the underlying $3.10 judgment, Sears argues that the circuit court erred both in entering a judgment in favor of the plaintiff in the absence of a finding that he was deceived by any alleged misrepresentation by one of its sales associates, and in holding that its "collection of excess sales tax from Plaintiff is a *de jure* deceptive practice violation of the [Consumer Fraud Act]."   We reject both arguments.

¶ 5    Section 10a(a) of the Consumer Fraud Act authorizes a private right of action for "[a]ny person who suffers actual damage as a result of a violation of [the] Act."   815 ILCS 505/10a(a) (West 2008).   The elements of a claim under the Consumer Fraud Act are:   (1) a deceptive act or practice by the defendant; (2) the defendants intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and (4) actual

damages to the plaintiff proximately caused by the deception. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 180 (2005). When, as in this case, a claim brought pursuant to the Consumer Fraud Act is based upon a misrepresentation, the plaintiff must prove that he was actually deceived in order to establish the element of proximate cause. *Avery*, 216 Ill. 2d at 199. However, in order to recover based upon a misrepresentation, a plaintiff need not establish *scienter* as even innocent misrepresentations may be actionable under the Consumer Fraud Act. *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1039 (1992).

¶ 6 Certain of the facts giving rise to the plaintiff's Consumer Fraud Act claim are not in dispute. In January of 2008, the National Telecommunications and Information Administration of the United States Department of Commerce began administering a federally-funded program enabling each household in the country to receive two NTIA Coupons that could be used for the purchase of eligible converter boxes which enable analog televisions to receive digital signals. Upon purchasing a qualifying converter box, an individual could present a NTIA Coupon to the retailer and receive a credit against the purchase price of up to $40. The retailer would then be reimbursed by the federal government for the lesser of $40 or the purchase price of the converter box.

¶ 7 On July 1, 2008, the Illinois Department of Revenue issued an information bulletin, informing all Illinois retailers that NTIA Coupons were exempt from Illinois sales tax and that retailers were only to charge sales tax on the net sale price of a converter box after the value of a NTIA Coupon was applied to reduce the retail price of the device. The record establishes that Sears learned of the information bulletin in July of 2008.

¶ 8 On April 9, 2009, the plaintiff applied for, and thereafter received, two NTIA Coupons. On April 19, 2009, he purchased a qualifying converter box from Sears at its Oak Brook store and presented a NTIA Coupon at the time of the purchase. The retail price of the converter box which

the plaintiff purchased was $59.99. The Sears sales associate who handled the transaction calculated the sales tax based upon the full retail price, resulting in a sales tax charge of $4.65. After adding $4.65 in sales tax to the $59.99 retail price of the converter box, the sales associate then subtracted the $40 value of the plaintiff's NTIA Coupon from the $64.64 gross price and charged the plaintiff $24.64. The plaintiff paid Sears the $24.64 calculated by its sales associate. Had the sales tax on the transaction been calculated as directed in the Illinois Department of Revenue's information bulletin, the $40 value of the plaintiff's NTIA Coupon should have been subtracted from the $59.99 retail price of the converter box and sales tax charged only upon the $19.99 remainder. If calculated properly, the plaintiff should only have been charged $1.55 in sales tax, not $4.65. The miscalculation resulted in the plaintiff being overcharged $3.10 in sales tax.

¶ 9     The plaintiff testified that he paid $24.64 for the converter box in reliance upon Sears's sales associate's representation that he owed that sum. He stated that, at the time that he purchased the converter box, he did not know that sales tax should not have been charged on the $40 value of the NTIA Coupon which he tendered. According to the plaintiff, had he known that Sears charged him too much for sales tax on the transaction, he would not have paid it.

¶ 10     In support of its argument that the plaintiff was not deceived when its sales associate represented that he owed $24.64 on the transaction, which included the $3.10 sales tax overcharge, Sears asserts that the plaintiff "went shopping for a law suit." Sears calls our attention to the fact that, on March 16, 2009, one month prior to the plaintiff's purchase of the converter box which is at issue in this action, Adrian Nava filed a class action lawsuit in the Circuit Court of Cook County against Sears for improperly charging sales tax on the entire retail price of converter boxes purchased with the use of NTIA Coupons. *Nava v. Sears, Roebuck & Co.*, No. 09 CH 11800 (Cir. Ct. Cook Co.). Coincidentally, the allegations in the plaintiff's original complaint are virtually

identical to those in Nava's complaint. Sears refers to the plaintiff as a "professional class action plaintiff" who has filed 23 class action complaints in the past eight years, using the same attorneys that represent him in this action. The implication being that the plaintiff was not deceived by any misrepresentation made by Sears's sales associate, but rather he knew before purchasing the converter box that he would be overcharged for sales tax on the transaction and made the purchase so that he could file the instant action.

¶ 11 The facts relied upon by Sears could certainly support the inference that the plaintiff was not deceived by the representations of Sears's sales associate as to the net amount that he owed and that he was well aware at the time that he purchased the converter box that sales tax should not have been assessed on the $40 value of the NTIA Coupon which he tendered. However, the circuit court did not draw those inferences. Rather, in its order of July 16, 2013, the circuit court specifically found that: (1) the plaintiff paid Sears $24.64 on the purchase of the converter box in reliance upon its sales associate's representation that he owed that sum; (2) at the time of the transaction, the plaintiff did not know that sales tax should not have been charged on the $40 value of the NTIA Coupon which he tendered; and (3) had the plaintiff known that he was being overcharged for sales tax, he would not have paid the sum. The circuit court's findings in this regard rest upon the credibility of the plaintiff's testimony.

¶ 12 The circuit judge had the opportunity to see and hear the plaintiff while testifying and was in a far better position to judge his credibility. When, as in this case, the circuit court's findings of fact depend upon the credibility of a witness, we defer to the circuit court's findings unless they are against the manifest weight of the evidence. *Chicago Investment Corp. v. Dolins*, 107 Ill. 2d 120, 124 (1985). A factual finding is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the finding appears to be unreasonable, arbitrary, or not based upon the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996).

Whether we might have reached the same conclusion is not the test of whether the circuit court's factual finding is against the manifest weight of the evidence, the appropriate test is whether there is any evidence in the record to support its finding. *In re Estate of Wilson*, 238 Ill. 2d 519, 570 (2010).

¶ 13 The plaintiff's testimony, if believed, is sufficient to support the circuit court's findings that he relied upon the representation of Sears's sales associate that he owed $24.64 on his purchase of the converter box which sum included $4.65 in sales tax and that he would not have paid that sum had he known that he was overcharged $3.10 in sales tax. Based upon the record before us, we are unable to conclude that the circuit court's findings are against the manifest weight of the evidence; and, although the circuit court did not make a specific finding that the plaintiff was deceived by the sales associate's representation as to the amount owed, that is the only conclusion which could reasonably be drawn from its factual findings.

¶ 14 Sears also argues that the circuit court erred in holding that its collection of excess sales tax from the plaintiff "is a *de jure* deceptive practice violation" of the Consumer Fraud Act. We disagree with the proposition as stated.

¶ 15 Although the circuit court's written order of July 16, 2013, states that "[c]harging sales tax in excess of the amount authorized by law is both deceptive and unfair," the findings of fact contained within that order clearly reflect that Sears's liability was not predicated merely upon an isolated miscalculation of the sales tax due on the plaintiff's purchase. The circuit court found that, as early as July of 2008, Sears was aware that sales tax should not to be charged on the value of a NTIA Coupon used to purchase a qualifying converter box, but it did not institute an automated system at its retail stores to exempt the value of NTIA Coupons from the calculation of sales tax. The circuit court also found that, in 281 transactions from April 1 through April 30,

2009, Sears improperly charged customers sales tax on the value of NTIA Coupons used in the purchase of converter boxes.

¶ 16     For these reasons, we reject Sears's assertion that the circuit court based its judgment on a holding that its collection of excess sales tax from the plaintiff "is a *de jure* deceptive practice violation" of the Consumer Fraud Act.

¶ 17     Sears has not argued that the circuit court erred in finding that it was engaged in trade or commerce in the retail sale of converter boxes or that it intended consumers, such as the plaintiff, to rely upon the representations of its sales associates as to the amount of sales tax due on the sale of a converter box when a NTIA Coupon was used.   Nor has it argued that the plaintiff suffered no damage when he was overcharged $3.10 for sales tax at the time that he purchased a converter box at one of its retail stores.   As a consequence, any claim of error based upon the circuit court's findings as to these issues has been forfeited.   Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Forfeiture aside, our examination of the record reveals that the circuit court's findings in this regard are amply supported by the evidence of record.   We conclude, therefore, that the plaintiff proved each element of his Consumer Fraud Act claim, and we affirm the $3.10 judgment entered against Sears.

¶ 18     Next, we address Sears's appeal from the circuit court's award of $157,813.53 in attorney fees pursuant to section 10a(c) of the Consumer Fraud Act (815 ILCS 505/10a(c) (West 2008)). Sears argues that the circuit court erred by:   (1) awarding fees without determining their reasonableness; (2) awarding fees for unreasonable services; (3) awarding fees based upon hourly rates supported by insufficient evidence as to their reasonableness; and (4) admitting the plaintiff's attorneys' computerized billing records into evidence in the absence of the underlying time sheets. Since we find that Sears's argument directed to the admissibility of the plaintiff's attorneys'

itemized billing statement which was attached to the fee petition is dispositive, we will address that issue first.

¶ 19     Section 10a(c) of the Consumer Fraud Act provides that, except in circumstances not relevant to this case, in any action brought pursuant section 10a of the statute, the court may award, in addition to other relief, "reasonable attorney's fees and costs to the prevailing party."   815 ILCS 505/10a(c) (West 2008).   Only reasonable fees may be awarded, and the party seeking fees bears the burden of presenting sufficient evidence from which the circuit court can base a decision as to their reasonableness.   *Huss v. Sessler Ford, Inc.*, 343 Ill. App. 3d 835, 843 (2003).   The party seeking fees must present a petition with detailed records containing facts and computations upon which charges are based, specifying the service performed, by whom they were performed, the time expended, and the hourly rate charged.   *Huss*, 343 Ill. App. 3d at 843.

¶ 20     Here, the plaintiff filed a petition seeking an award of $252,402.08 for attorney fees and costs.   Attached to that petition was an itemized statement dated July 31, 2013, reflecting the services performed by Zimmerman Law Offices, P.C., the law firm that represented the plaintiff in this action.   The statement contained 518 entries setting forth a description of the work performed, the date each task was performed, the initials of the attorney or paralegal who performed each task, the time expended, and the hourly rate charged.   The statement also listed all expenses incurred in representing the plaintiff.

¶ 21     Sears filed a response to the plaintiff's fee petition arguing, *inter alia,* that the destruction of the underlying time sheets upon which the statement was based rendered the document inadmissible as evidence supporting an award of fees.

¶ 22     A hearing was held on the plaintiff's fee petition on September 4, 2013.   At the commencement of that hearing, the parties elected to rest on their written submissions and not to offer any additional evidence.   The circuit court entertained argument from counsel for both

parties addressing, among other issues, the admissibility of the billing statement attached to the fee petition. Well into the argument, the circuit court offered the parties the opportunity to present additional evidence. Thomas A. Zimmerman, Jr., the sole shareholder of Zimmerman Law Offices, P.C., elected to testify in support of the admissibility of the billing statement. He was sworn and testified in narrative form.

¶ 23    Mr. Zimmerman testified to the billing procedures of his law firm and the manner in which the billing statement attached to the fee petition was prepared. According to Mr. Zimmerman, the attorneys and paralegal that worked on the plaintiff's case would complete written time sheets on a daily basis which contained the name of the case, a description of the work performed, the date it was done, the name of the attorney or paralegal performing the work, and the time that it took to do the work. The handwritten time sheets were placed on a shelf in his office. Mr. Zimmerman stated that "every month or so" the handwritten time sheets are given to his secretary and she enters them verbatim into a computer program known as Time Slips which produces an itemized statement. Mr. Zimmerman testified that, after an itemized statement was produced by the computer, he compared the entries with the handwritten time sheets to ensure accuracy. In response to a question by Sears' attorney on cross-examination, Mr. Zimmerman stated: "Once I go through and check the time sheet against the statement, I throw the time sheets out." When questioned as to the amount of time that the written time sheets remained on the shelf in his office before being entered into the computer, Mr. Zimmerman testified that it would have been "somewhere in the area" of one or two months.

¶ 24    Following Mr. Zimmerman's testimony, the circuit court entertained additional argument and, thereafter, entered an order requiring the parties to submit agreed calculations reflecting: that portion of the July 31, 2013, billing statement attributable to services rendered from June 7, 2010, to May 6, 2013; that portion of the statement reflecting services rendered from October 27,

2011, to May 6, 2013; and calculations for those same periods excluding entries where discrepancies exist as compared to an earlier billing statement dated January 30, 2012. The hearing was then adjourned, and the circuit court took the matter under advisement.

¶ 25    On September 15, 2013, the parties filed their joint stipulation as ordered by the circuit court.  According to that stipulation, the claimed attorney fees set forth in the itemized billing statement of July 31, 2013, for the period from June 7, 2010, to May 6, 2013, is $197,650.96.  For the period from October 27, 2011, to May 6, 2013, the claimed attorney fees set forth in the July 31, 2013, statement is $160,897.53.  After omitting all entries that were added to the July 31, 2013, billing statement which do not appear in the January 30, 2012, statement for the same service dates, the claimed attorney fees set forth in the statement of July 31, 2013, for the period from June 7, 2010, to May 6, 2013, is $189,412.96, and for the period from October 27, 2011, to May 6, 2013, is $157,813.53.

¶ 26    On October 6, 2014, the circuit court entered an order awarding the plaintiff attorney fees in the sum of $157,813.53.  In its written order, the circuit court found that:   the plaintiff won all of the relief which he sought in his Consumer Fraud Act claim; no bad faith on the part of Sears was shown; Sears has the ability to pay a fee award; and that a fee award would help deter other retailers "from such caselessness [*sic*] regarding the taxation of such transactions in the future." Finding that the plaintiff only prevailed on his individual Consumer Fraud Act claim in his multi-count action, the circuit court reasoned that the fees earned after the dismissal of all of the plaintiff's claims save for his individual Consumer Fraud Act claim were "presumably" earned in furtherance of obtaining recovery on that remaining claim.   The circuit court concluded that all of the fees earned after the plaintiff's individual Consumer Fraud Act claim was transferred to the municipal department of the circuit court on October 27, 2011, were earned in furtherance of

obtaining relief under that claim.   As to the amount of fees awarded, the circuit court's order states as follows:

> "While Aliano [the plaintiff] failed to produce the original time sheet, he presented testimony that laid the foundation for admission of the bills as business records.   Mr. Zimmerman testified credibly (1) the time keeping software is recognized as standard, (2) the input was generally entered in the regular course of business reasonably close to the time actually worked by the attorneys, and (3) the sources of information, method and time of preparation indicate its trustworthiness and justify is admission.   However, certain entries were not made reasonably close to the work.   Those cannot be admitted into evidence.   As to the remainder, Mr. Zimmerman testified credibly as to the sources of information, method and time of preparation such that his testimony establishes [the] bills' trustworthiness and justif[ies] their admission.
>
> For the following [*sic*] reasons[,] the court awards attorney fees in the amount of $157,813.53."

¶ 27     It is apparent from the above quoted portion of the circuit court's order and the parties' joint stipulation that, after omitting entries added to the July 31, 2013, billing statement, which do not appear on the January 30, 2012, statement, the circuit court awarded 100% of the fees claimed by the plaintiff for services rendered from October 27, 2011, to May 6, 2013.   The circuit court declined to award the plaintiff any fees for the legal services rendered by his attorneys prior to October 27, 2011.   However, any claim of error as a consequence of the failure to award fees for services rendered prior to that date has been forfeited as the plaintiff did not file a cross-appeal.

¶ 28    The propriety of the fee award rests initially upon the admissibility of the July 31, 2013, billing statement as there is no other evidence of record from which a fee award could be calculated.

¶ 29    A circuit court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 92 (1995). The circuit court abuses its discretion when its ruling on the admissibility of evidence rests on an error of law. *Peeples v. Village of Johnsburg*, 403 Ill. App. 3d 333, 339 (2010).

¶ 30    Sears argues that the circuit court erred in admitting the July 31, 2013, billing statement into evidence by reason of the plaintiff's inability to produce the original time sheets upon which the statement is based. As earlier noted, the circuit court found that the plaintiff failed to produce his attorneys' original time sheets, and Mr. Zimmerman testified that those time sheets had been purposefully discarded. The plaintiff argues that the itemized billing statement of July 31, 2013, was properly admitted into evidence pursuant to the business record exception to the hearsay rule. The resolution of this issue rests on the distinction between computer-generated records and a printout of computer-stored data.

¶ 31    Computer-generated records are the spontaneously created tangible results of the internal electrical and mechanical operations of a computer itself and which are not dependent upon the observations and reporting of a human declarant. Examples include a record of conditions on an aircraft produced by a flight recorder device, a record of geophysical occurrences produced by a seismograph, and billing data generated instantaneously by a computer when a telephone call is made. See *People v. Holowko*, 109 Ill. 2d 187, 191-93 (1985); *People v. Houston*, 288 Ill. App. 3d 90, 98-99 (1997). The admission into evidence of computer-generated records "requires only foundational proof of the method of the recording of the information and the proper functioning of the device by which it was effected." *Holowko*, 109 Ill. 2d at 193. In contrast, computer-stored

records consist of information placed into a computer by an out-of-court declarant. Computer-stored data is admissible under the business records exception to the hearsay rule if "(1) the electronic computing equipment is recognized as standard, (2) the input is entered in the regular course of business reasonably close in time to the happening of the event recorded, and (3) the foundation testimony establishes that the source of the information, method and time of preparation indicate its trustworthiness and justify its admission." *Houston*, 288 Ill. App. 3d at 98. When, however, computer-stored records sought to be admitted are the product of human input taken from information contained in original documents, the original documents must be presented in court or made available to the opposing party, and the party seeking admission of a record of that consumer-stored data must be able to provide testimony of a competent witness who has seen the original documents and can testify to the facts contained therein. *In re Marriage of DeLarco*, 313 Ill. App. 3d 107, 115-16 (2000); *Landmark Structures, Inc. v. F.E. Holmes & Sons Construction Company, Inc.*, 195 Ill. App. 3d 1036, 1051 (1990). When the original documents have been destroyed by the party offering secondary evidence of their content, the secondary evidence is not admissible unless, by showing that the destruction of the original documents was accidental or was done in good faith and without any intention to prevent their use as evidence, the party offering the secondary evidence repels every inference of fraudulent design in the destruction of the original documents. *Lam v. Northern Illinois Gas Co.*, 114 Ill. App. 3d 325, 332-33 (1983).

¶ 32    In this case, the billing statement of July 31, 2013, upon which the plaintiff's fee petition is based, is the product of human input of data derived from original time sheets into a computer program known as Time Slips. The billing statement is nothing more than a tangible printout of that computer-stored data, consisting of approximately 518 entries. Assuming for the sake of analysis, but not deciding, that the circuit court's determination that Mr. Zimmerman's testimony

satisfied the foundational requirements necessary to support a finding that the billing statement is a business record of the Zimmerman Law Offices, P.C., we nevertheless find that admitting the documents into evidence was an abuse of discretion.

¶ 33    The original time sheets underlying the July 31, 2013, billing statement, having been discarded by the plaintiff's attorneys, were not and could not, be produced.   As a consequence, Sears was deprived on an opportunity to test the reliability and accuracy of the statement by comparing the entries contained therein with the original time sheets upon which those entries are based and through cross-examination of Mr. Zimmerman.   In the case of *DeLarco*, the Second District of the Appellate Court held that it was error for the circuit court to admit into evidence an itemized bill for attorney fees which consisted of a printout of computer-stored data that otherwise satisfied the foundational requirements of a business record when the party seeking admission of the printout failed to make the original documents upon which the printout was based available to the opposing party.   *DeLarco*, 313 Ill. App. 3d at 114-16.   The facts in *DeLarco* are virtually indistinguishable from those present in the instant case.   In both cases, the document sought to be admitted consisted of a computer-generated statement for legal services.   In each case, the attorneys performing the services completed time sheets and a member of the law firm's clerical staff periodically entered the information contained on those time sheets into a computer using a Time Slips program.   That program was then used to generate itemized billing statements, which in this case was the July 31, 2013, billing statement attached to the fee petition.   In neither case were the original time slips available for examination by the party opposing the request for fees. The *DeLarco* court reversed the circuit court's fee award as a consequence.   *DeLarco*, 313 Ill. App. 3d at 116.

¶ 34    Based upon the reasoning in *DeLarco*, we find that the circuit court erred as a matter of law in admitting the July 31, 2013, billing statement into evidence in the absence of the plaintiff's

production of the original time sheets and in relying upon that statement in calculating the plaintiff's recoverable fees. Absent the July 31, 2013, billing statement, there is no evidence in the record from which a reasonable fee could be calculated and the fee award of October 6, 2014, must be reversed. That is not to say, however, that the plaintiff is not entitled to an award of reasonable attorney fees and costs. The record before us demonstrates that the plaintiff's attorneys, in fact, expended time and effort in the prosecution of this case. Had the July 31, 2013, billing statement been excluded from evidence at the time of the September 4, 2013, hearing on the fee petition, the plaintiff would have been afforded the opportunity to attempt to establish the reasonable fees to which he is entitled by means other than the billing statement. It is for this reason that we remand this matter back to the trial court with directions to grant the plaintiff an opportunity to prove the reasonable fees to which he is entitled through admissible evidence.

¶ 35 Having reversed the circuit court's attorney fee award based upon its erroneous admission of the billing statement attached to the plaintiff's fee petition, we need not address Sears's other assignments of error addressed to that award.

¶ 36 For the reasons, stated we: affirm the circuit court's order of July 16, 2013, entering judgment in favor of the plaintiff and against Sears in the sum of $3.10; reverse the circuit court's order of October 6, 2014, awarding the plaintiff $157,813.53 in attorney fees; and remand this cause back to the circuit court to conduct a hearing to determine the reasonable fees to which the plaintiff is entitled pursuant to section 10a(c) of the Consumer Fraud Act.

¶ 37 Affirmed in part; reversed in part and remanded.