# Illinois Official Reports

## Appellate Court

---

### *Aliano v. Transform SR LLC*, 2020 IL App (1st) 172325

---

| | |
|---|---|
| Appellate Court Caption | MARIO ALIANO, Plaintiff-Appellee, v. TRANSFORM SR LLC, as Successor in Interest to Sears, Roebuck and Company, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>No. 1-17-2325 |
| Filed | November 6, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-16132; the Hon. Thomas More Donnelly, Judge, presiding. |
| Judgment | Reversed in part, vacated in part, and remanded. |
| Counsel on Appeal | Francis A. Citera, Jane B. McCullough, and Paul A. Del Aguila, of Greenberg Traurig LLP, of Chicago, for appellant.<br><br>Thomas A. Zimmerman Jr., Sharon A. Harris, Nickolas J. Hagman, Matthew C. De Re, and Maebetty Kirby, of Zimmerman Law Offices, P.C., of Chicago, for appellee. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Rochford concurred in the judgment and opinion.

## OPINION

¶ 1  Transform SR LLC (Transform), as successor in interest to Sears, Roebuck and Co. (Sears), appeals from a $267,470 judgment entered by the circuit court in favor of the plaintiff, Mario Aliano, for attorney fees pursuant to section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/10a(c) (West 2008)). For the reasons that follow, we reverse in part, vacate in part, and remand for further proceedings.

¶ 2  This is the third time that this case has come before this court. The matter first came before us on Sears's appeal from a $3.10 judgment entered in favor of the plaintiff on his Consumer Fraud Act claim. As that appeal was filed prior to the trial court having ruled on the plaintiff's pending petition for an award of attorney fees and in the absence of a written finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), we dismissed the appeal for want of jurisdiction. *Aliano v. Sears, Roebuck & Co.*, 2014 IL App (1st) 132622-U (*Aliano I*). The matter next came before this court on Sears's appeal from both the circuit court's $3.10 judgment in favor of the plaintiff and its award of $157,813.53 in attorney fees. In that appeal, we affirmed the $3.10 actual damage award, but reversed the $157,813.53 attorney fees award. We found that the circuit court erred as a matter of law in admitting an attorney billing statement into evidence in the absence of the plaintiff's production of the original time sheets underlying the statement and in relying upon that statement in calculating the plaintiff's recoverable fees. We remanded the matter back to the circuit court with directions to conduct a hearing to determine the reasonable attorney fees to which the plaintiff is entitled. *Aliano v. Sears, Roebuck & Co.*, 2015 IL App (1st) 143367 (*Aliano II*). Having reversed the attorney fees award on evidentiary grounds, we never addressed the question of the reasonableness of the award. *Id.* ¶ 35.

¶ 3  On remand, the plaintiff filed a revised attorney fees petition, seeking an award of $335,971 in fees and $3,376.48 in costs. The plaintiff's revised attorney fees petition is supported by the affidavit of Thomas A. Zimmerman Jr., one of the plaintiff's attorneys and the sole shareholder of Zimmerman Law Offices, P.C. (hereinafter referred to as the Zimmerman Firm). Attached to that affidavit as an exhibit is a billing statement, dated June 17, 2016, containing line item entries for legal services rendered on behalf of the plaintiff in this case for the period from October 27, 2011, through June 17, 2016. Each of the line item entries sets forth a description of the task performed, the date performed, the time taken to perform the task, the initials of the individual performing the task, that individual's hourly billing rate, and the amount charged. Thereafter, the circuit court conducted an evidentiary hearing and awarded the plaintiff $267,470 for attorney fees. Sears timely filed the instant appeal.

¶ 4  After this appeal was fully briefed, Sears commenced a voluntary proceeding under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the Bankruptcy Court) (see *In re Sears Holdings Corp.*, 613 B.R. 51 (Bankr. S.D.N.Y. 2020), *vacated by In re Sears Holdings Corp.*, 616 B.R. 615 (Bankr.

S.D.N.Y. 2020)). On October 15, 2018, this court entered an order staying the instant appeal due to the pendency of Sears's bankruptcy proceeding. Thereafter, the Bankruptcy Court entered an order approving an agreement providing for the sale of certain of Sears's assets. In connection with that sale, Transform and its affiliates agreed to assume certain of Sears's obligations. On October 22, 2019, Transform agreed to be substituted in the place of Sears as the real party in interest in this case. On December 23, 2019, the Bankruptcy Court entered an order lifting the automatic stay applicable to this appeal to effectuate the substitution of Transform in the place of Sears and permitting this appeal to continue against Transform, but not against Sears. On January 6, 2020, Sears and Transform filed a motion with this court to substitute Transform as the real party in interest in the place of Sears and to revise the caption of this appeal to reflect the substitution. On January 29, 2020, this court entered an order granting the motion, substituting Transform as the real party in interest in the place of Sears and lifting the October 15, 2018, stay.

¶ 5     During its argument before this court, Transform acknowledged that it adopted the briefs filed by Sears in this appeal. Although the briefs were originally filed on behalf of Sears, henceforth in this opinion, we will refer to the arguments as having been made by Transform.

¶ 6     Transform argues, *inter alia*, that the circuit court's award on remand of $267,470 in attorney fees pursuant to section 10a(c) of the Consumer Fraud Act is both legally erroneous and an abuse of discretion. In addressing the assignments of error, we have divided the fees awarded by the circuit court into two groups: fees awarded for legal services rendered on behalf of the plaintiff before January 1, 2014 (hereafter referred to as pre-2014 fees), and fees awarded for services rendered after January 1, 2014 (hereinafter referred to as post-January 1, 2014, fees).

¶ 7     We address first the pre-2014 fees. The billing statement attached to the plaintiff's revised attorney fees petition contains 301 line-item entries for legal services rendered before January 1, 2014. Of those entries, 250 relate to services rendered from October 27, 2011, through May 6, 2013, and 51 relate to services rendered from June 4, 2013, through December 31, 2013.

¶ 8     Transform argues that (1) in awarding pre-2014 fees, the circuit court violated the law-of-the-case doctrine and this court's mandate in *Aliano II* by admitting into evidence and relying upon the plaintiff's exhibits 56 and 57, which were computer printouts dated December 6, 2016, of legal services rendered from October 27, 2011, through May 6, 2013, and from June 4, 2013, through December 31, 2013, respectively; and (2) the testimony of Zimmerman in support of pre-2014 fees was not credible.

¶ 9     The plaintiff offered exhibits 56 and 57 into evidence, and Sears objected. The circuit court took the matter under advisement but never ruled on the admission of those exhibits until its "Memorandum Opinion and Order" entered on August 25, 2017. Although not referring to the exhibits by number, the circuit court held that "secondary evidence may be admitted." The time entries contained in exhibits 56 and 57 are exactly the same as the corresponding time entries contained in the billing statement dated June 17, 2016, attached to the plaintiff's revised attorney fee petition for the period of October 27, 2011, through December 31, 2013.

¶ 10    Our initial focus is on the pre-2014 fees awarded for legal services rendered from October 27, 2011, through May 6, 2013. We begin by addressing Transform's argument that the circuit court's admission into evidence and reliance upon exhibit 56 violated the law-of-the-case doctrine. The plaintiff's revised petition for attorney fees attributable to legal services rendered on his behalf for the period from October 27, 2011, through May 6, 2013, sought an award of

fees for the same services that were the subject of Sears's appeal in *Aliano II*, and the time entries on exhibit 56 are identical to the corresponding time entries on the computerized billing statement dated July 31, 2013, which we found inadmissible as evidence in *Aliano II*. In *Aliano II*, the circuit court awarded the plaintiff $157,813.53 for attorney fees incurred for the period of October 27, 2011, through May 6, 2013. *Aliano II*, 2015 IL App (1st) 143367, ¶ 27. As noted earlier, we reversed that award, finding that, because the plaintiff's attorney had discarded the original time slips underlying the billing statement submitted to the plaintiff and was unable to produce those original time sheets for examination by Sears, the trial court erred in admitting the billing statement into evidence and in relying upon that statement in calculating the plaintiff's recoverable fees. *Id.* ¶ 34. We noted that,

> "[w]hen the original documents have been destroyed by the party offering secondary evidence of their content, the secondary evidence is not admissible unless, by showing that the destruction of the original documents was accidental or was done in good faith and without any intention to prevent their use as evidence, the party offering the secondary evidence repels every inference of fraudulent design in the destruction of the original documents." *Id.* ¶ 31.

The secondary evidence being referred to in *Aliano II* was the computerized billing statement dated July 31, 2013. We went on to hold that,

> "[h]ad the July 31, 2013, billing statement been excluded from evidence at the time of the September 4, 2013 [*sic*], hearing on the fee petition, the plaintiff would have been afforded the opportunity to attempt to establish the reasonable fees to which he is entitled *by means other than the billing statement*. It is for this reason that we remand this matter back to the trial court with directions to grant the plaintiff an opportunity to prove the reasonable fees to which he is entitled through admissible evidence." (Emphasis added.) *Id.* ¶ 34.

¶ 11   Transform argues that the trial court's admission into evidence and reliance upon exhibit 56 in awarding the plaintiff attorney fees on remand violated the law-of-the-case doctrine and this court's mandate in *Aliano II*. We agree.

¶ 12   "The law-of-the-case doctrine prohibits the reconsideration of issues that have been decided by a reviewing court in a prior appeal." *In re Christopher K.*, 217 Ill. 2d 348, 363 (2005). Issues of law or fact decided by a reviewing court are binding on the trial court on remand. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 31.

¶ 13   In *Aliano II*, we held that the computerized billing statement dated July 31, 2013, that was offered in evidence by the plaintiff in support of his original fee petition was inadmissible and that the circuit court abused its discretion in admitting the document into evidence. *Aliano II*, 2015 IL App (1st) 143367, ¶ 32. Plaintiff's exhibit 56 is nothing more than a copy of the computerized billing statement dated July 31, 2013; the only difference was the dates on the documents. Admission of exhibit 56 into evidence and the circuit court's reliance on the document in awarding attorney fees for the period from October 27, 2011, through May 6, 2013, following the evidentiary hearing on remand, violated the law-of-the-case doctrine.

¶ 14   Transform's argument that the circuit court violated the law-of-the-case doctrine by relying upon exhibit 57 in awarding attorney fees for services rendered on behalf of the plaintiff for the period from June 4, 2013, through December 31, 2013, presents a different issue. The 51 time entries contained in exhibit 57 and the corresponding time entries on the June 17, 2016,

- 4 -

computerized billing statement attached to the plaintiff's revised attorney fees petition were, like the time entries in exhibit 56 and the computerized billing statement of July 31, 2013, derived from computer stored data that was the product of human input taken from original hand-written time sheets. As described in *Aliano* II, during the hearing on the plaintiff's original fee petition held on September 4, 2014, Zimmerman testified that he and other individuals in the firm working on the plaintiff's action would complete hand-written time sheets on a daily basis, containing a description of the work performed, the date it was done, the initials of the attorney or paralegal performing the work, and the time that it took to do the work. *Id.* ¶ 23. The hand-written time sheets were placed on a shelf in Zimmerman's office. Zimmerman stated that " 'every month or so' " the hand-written time sheets are given to his secretary and she enters them into a computer program that produces an itemized statement. *Id.* Zimmerman testified that, after an itemized statement was produced by the computer, he compared the entries with the hand-written time sheets to ensure accuracy. In response to a question by Sears's attorney on cross-examination, Zimmerman stated: " 'Once I go through and check the time sheet against the statement, I throw the time sheets out.' " *Id.* When questioned as to the amount of time that the written time sheets remained on the shelf in his office before being entered into the computer, Zimmerman testified that it would have been " 'somewhere in the area' " of one or two months. *Id.* During the evidentiary hearing conducted by the circuit court on remand, Zimmerman again admitted that he discarded the original time sheets covering legal services rendered on behalf of the plaintiff before January 1, 2014. In that hearing, however, unlike the September 4, 2014, hearing on the plaintiff's original fee petition, Zimmerman specifically denied discarding the original time sheets in bad faith or to prevent them from being examined by Sears's attorneys or presented in court. In its "Memorandum Opinion and Order" entered on August 25, 2017, the circuit court noted that, "[a]lthough Zimmerman displays extreme incompetence with respect to the proper preservation of billing records, he exhibited no intent to defraud Sears." The court found that "Zimmerman destroyed the time sheets in good faith and repelled every inference of fraudulent design." We disagree that Zimmerman's testimony repelled every inference of fraudulent design.

¶ 15    The original hand-written time sheets covering legal services rendered on behalf of the plaintiff from October 27, 2011, through December 31, 2013, were not accidently destroyed; they were intentionally discarded by Zimmerman. The plaintiff's own evidence established that Zimmerman is an experienced consumer fraud litigator, commanding fees of $500 per hour. It is inconceivable to us that such an experienced litigator was, at the time that he discarded all of the original hand-written time sheets, unaware that, in an action pursuant to a fee-shifting statute such as the Consumer Fraud Act, a defendant has the right to examine original time records supporting a request for an award of attorney fees or that those original time sheets must be preserved. We do not believe that an inference of fraudulent design is repelled by the testimony of the attorney, who will profit from an award of fees, merely professing a lack of bad faith or of an intention to prevent the documents from being examined by an opponent. When, as in this case, the original writing was intentionally discarded, rather than accidentally destroyed, there must be some evidence that it was reasonable to do so under the circumstances. Disposing of relevant documents by an experienced litigator is not reasonable. For the same reasons given by this court in *Aliano II* in holding that the computerized billing statement dated July 31, 2013, was inadmissible, we hold that exhibit 57,

submitted by the plaintiff in support of his revised petition for fees, was inadmissible and the circuit court erred in admitting the exhibit in evidence and relying on it in awarding attorney fees for the period from June 4, 2013, through December 31, 2013.

¶ 16    Addressing the pre-2014 fees awarded by the trial court on remand, the plaintiff specifically asserts in his brief that, "in awarding fees for the Pre-2014 Time, the circuit court did not rely on the pre-2014 billing records, *i.e.*, Plaintiff's exhibits 56 and 57. Instead, the circuit court relied upon the testimony of Mr. Zimmerman." Absent exhibits 56 and 57, which we have found inadmissible, the only evidence supporting the trial court's award of pre-2014 fees was Zimmerman's testimony.

¶ 17    During the hearing on remand, Zimmerman testified that he had no present recollection of the services performed on behalf of the plaintiff prior to January 1, 2014. He stated that, in preparation for the hearing on remand, he reviewed the court file, the appellate record in *Aliano II*, his office file, computer time-slip entries, his notes, notes that were generated at the time that work was being performed on the case, and e-mails and correspondence that were sent to and received from Sears's attorneys. Zimmerman testified that, based on that review, he developed a spreadsheet to help him recall the specific tasks that were performed on specific days and how long it took him and the other attorneys and paralegals in the Zimmerman Firm to perform those tasks. The spreadsheet contains 301 line-item entries describing legal services rendered on behalf of the plaintiff from October 27, 2011, through December 31, 2013. Zimmerman denied that he copied any of the material he reviewed directly onto the spreadsheet. However, with the exception of a single entry for services rendered on February 6, 2012, the remaining 249 entries in the spreadsheet for the period from October 27, 2011, through May 6, 2013, are a verbatim copy of the corresponding 249 entries for that same period in the July 31, 2013, billing statement that this court found inadmissible as evidence in *Aliano II*. The 51 entries on the spreadsheet for the period from June 4, 2013, through December 31, 2013, are, with the exception of a single entry for services rendered on September 25, 2013, a verbatim copy of the corresponding 50 entries for that same period contained in both the June 17, 2016, billing statement that was attached to the plaintiff's revised petition for an award of attorney fees filed after the matter was remanded and plaintiff's exhibit 57 which, in the preceding paragraphs, we have determined was inadmissible as evidence.

¶ 18    Zimmerman was asked questions relating to the pre-2014 legal services performed on behalf of the plaintiff. By the circuit court's count, Zimmerman testified to legal services performed on 147 separate dates during that period. In response to questions addressed to tasks performed on each of those dates, Zimmerman initially responded that he did not remember whether or not work was done on each of the specific dates and that his memory was exhausted. When asked if there was anything that would refresh his recollection, Zimmerman stated that the spreadsheet that he prepared would do so. He was then requested to look at the Spreadsheet and then turn it over. After examining the spreadsheet and turning it over as requested, Zimmerman was asked if he then had an independent recollection of the work performed on the specific date. Zimmerman stated that his memory was refreshed, and he then testified to the work performed, who performed the work, and the time that it took to perform each task to the tenth of an hour. His testimony corresponded almost exactly to the entries on the spreadsheet for each date. In addition, Zimmerman identified 36 exhibits consisting of e-mails, letters, notices, pleadings, deposition transcripts, discovery responses, trial transcripts, and orders relating to the legal work about which he testified. We note that none of the exhibits

contain any indication of the time expended, a fact which the plaintiff appears to have admitted in his brief.

¶ 19　　After looking at the Spreadsheet, Zimmerman was not only able to testify under the guise of refreshed recollection to the work that he performed, he also testified to the work performed, to the tenth of an hour, by other attorneys and paralegals employed by the Zimmerman Firm, asserting that they performed their work in his presence. As to the work performed on this case by Adam Tamburelli on July 12, 2012, Zimmerman testified that he was not only with Tamburelli constantly for 4.7 hours as he performed the work, but that he even accompanied Tamburelli to the bathroom.

¶ 20　　In its "Memorandum Opinion and Order" entered on August 25, 2017, the trial court found Zimmerman's testimony that he was with Tamburelli constantly for 4.7 hours on July 12, 2012, to be incredible. With that single exception, however, the trial court found that "Zimmerman testified credibly" and concluded that the plaintiff had proven the "hours worked 'by means other than' the 2013 records." Although the trial court found that Zimmerman's refreshed recollection testimony of the numerous services performed by him and the members of his firm in this case was "unusual," it, nevertheless, found that "it is not impossible that Zimmerman could call to mind numerous past events after the review of the spreadsheet and, before that, review of 'his prior notes, the pleadings, the time entries, [and] the bills.' " The trial court concluded that Zimmerman's memory was "revived" and that he "testified credibly."

¶ 21　　The credibility of witnesses and the weight to be given their testimony is a matter for the trier of fact, and a reviewing court will not substitute its judgment on such matters. The rule is not absolute, however. Testimony that is so inherently improbable as to be contrary to common experience must be rejected. *In re Marriage of Gordon*, 233 Ill. App. 3d 617, 657-58 (1992). When the trial court's findings of fact depend upon the credibility of a witness, we defer to the trial court's findings unless they are against the manifest weight of the evidence. *Chicago Investment Corp. v. Dolins*, 107 Ill. 2d 120, 124 (1985). A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996). Based on the record in this case, we believe that the trial court's determination that Zimmerman testified credibly from refreshed recollection is against the manifest weight of the evidence.

¶ 22　　The notion that Zimmerman could review the court file, the appellate record in *Aliano II*, his office file, computer time-slip entries, his notes, notes that were generated at the time that work was being performed on the case, and e-mails and correspondence that were sent to and received from Sears's attorneys and then produce the Spreadsheet without copying the entries from the July 31, 2013, billing statement that this court found inadmissible as evidence in *Aliano II* or its copy, exhibit 56, and from the computerized billing statement for the period of June 4, 2013, through December 31, 2013, which became exhibit 57, is patently unbelievable. With two exceptions, the entries on the Spreadsheet are exact duplicates of the corresponding 299 entries on the pre-2014 billing statements. The only reasonable conclusion that could be drawn from these facts is that the entries on the spreadsheet that Zimmerman used to refresh his recollection were copied directly from those billing statements. We also find it unbelievable that, after viewing the spreadsheet, Zimmerman could independently recall the date on which legal services were rendered, who performed those services, and the amount of time to the tenth of an hour taken to perform those services on over 100 separate dates from October 27, 2011, through December 31, 2013, especially in view of the fact that the Spreadsheet reflects

that over 75 of the entries were for services rendered by individuals other than Zimmerman himself. These facts lead, in our opinion, to a single conclusion—namely, that Zimmerman, after denying a present recollection, read the entries on the spreadsheet and then testified, not to refreshed recollection, but rather to what he had just read. We do not wish to be understood as suggesting that Zimmerman was precluded from using the computerized billing statement(s) for pre-2014 services in the preparation of the Spreadsheet that he used to refresh his recollection. See *Moran v. Erickson*, 297 Ill. App. 3d 342, 360 (1998) (explaining that a writing used by a witness to refresh recollection need not itself be admissible in evidence) However, a witness, such a Zimmerman, who has denied present recollection of an event and who refers to a document to refresh his recollection must then testify from his refreshed recollection and may not merely recite what he read on the refresher document under the guise of refreshed recollection. See *Horace Mann Insurance Co. v. Brown*, 236 Ill. App. 3d 456, 462 (1992).

¶ 23    It is well settled that a party seeking an award of attorney fees always bears the burden of presenting sufficient evidence from which a trial court can assess the reasonableness of the fees claimed. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983 (1987). The absence of competent evidence of the time taken to perform a task claimed in a petition for an award of attorney fees precludes a finding of reasonableness. *In re Marriage of Broday*, 256 Ill. App. 3d 699, 707 (1993). Having determined that exhibits 56 and 57 were erroneously admitted in evidence and having found that Zimmerman's refreshed recollection testimony as to the legal services performed for the plaintiff from October 27, 2011, through December 31, 2013, was not credible, we conclude that the plaintiff failed to produce admissible evidence supporting the reasonableness of his claim for attorney fees for that period. We, therefore, reverse, as against the manifest weight of the evidence, the trial court's award of $161,148 for pre-2014 fees. Having reversed the trial court's award of pre-2014 fees based upon a failure of proof, we need not address Transform's other arguments addressed to those same fees.

¶ 24    We next address the fees awarded by the trial court for legal services rendered to the plaintiff for the period from January 2, 2014, through June 17, 2016. In support of his request for an award of $153,322 in attorney fees for that period, the plaintiff introduced his exhibit 55, which is a computer printout, dated December 6, 2015, containing 237 line-item entries setting forth a description of the task preformed, the date performed, the initials of the individual performing the task, the time taken, and the amount charged. Unlike the computer printouts for legal services rendered pre-2014, exhibit 55 is a computer-generated record. Zimmerman testified that, as of January 1, 2014, his law firm began using Sage Timeslips, a time-keeping computer program into which the attorneys and paralegals input their time directly into the program on the date that their work was performed. Exhibit 55 was admitted in evidence without objection. After reducing the plaintiff's request for post-January 1, 2014, attorney fees for services that it deemed excessive, the trial court awarded the plaintiff $106,322 in attorney fees for the period from January 2, 2014, through June 17, 2016.

¶ 25    Transform argues that, in its post-January 1, 2014, fee award, the trial court erred both in awarding the plaintiff attorney fees for services rendered in defense of Sears's appeal in *Aliano II* and in failing to conduct a proper reasonableness inquiry as to the fees awarded. We address both arguments in turn.

¶ 26    As to the attorney fees awarded for the plaintiff's defense of Sears's appeal in *Aliano II*, Transform contends that, contrary to the trial court's finding, the plaintiff was not the prevailing party. It notes that there were two issues resolved in *Aliano II*—namely, the

plaintiff's award of $3.10 for compensatory damages and the award of $157,813.53 for attorney fees. Transform argues that the trial court erroneously determined that, in *Aliano II*, this court "awarded 100% of the relief Aliano sought and to which he was entitled to under the [the Consumer Fraud Act]." The plaintiff argues that, since he was successful in *Aliano II* on the $3.10 compensatory damage award, he was a prevailing party in that appeal, entitling him to seek an award for reasonable attorney fees incurred for that appeal. We agree with the plaintiff.

¶ 27    Section 10a(c) of the Consumer Fraud Act provides that, except in circumstances not relevant to this case, in any action brought pursuant to section 10a of the statute, the court may award, in addition to other relief, "reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c) (West 2016). When, as in this case, a claim under the Consumer Fraud Act is litigated both at trial and on appeal, the reasonable attorney fees incurred by a prevailing party on appeal are an integral part of the claim and are recoverable. *Warren v. LeMay*, 142 Ill. App. 3d 550, 583 (1986); see also *Department of Public Works & Buildings* v. *Lanter*, 15 Ill. 2d 33, 40 (1958). A plaintiff may be considered a prevailing party for attorney fees purposes if he or she is successful on any significant issue in the litigation that achieves some benefit that was sought in bringing suit. See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). We believe that the same is true in determining whether a plaintiff is a prevailing party on appeal for attorney fee purposes.

¶ 28    Although we do not agree with the trial court's conclusion that, in *Aliano II*, this court "awarded 100% of the relief Aliano sought and to which he was entitled to under the [Consumer Fraud Act]," we, nevertheless, agree that the plaintiff was a prevailing party in that appeal. In *Aliano II*, this court affirmed the plaintiff's $3.10 compensatory damage award, which is 100% of the compensatory damages that he could have been awarded, as that sum was the full amount of overcharged sales tax that formed the basis of the plaintiff's action against Sears pursuant to the Consumer Fraud Act. By successfully defending the compensatory damage award in *Aliano II*, the plaintiff established his right to seek an award of attorney fees on remand. We believe that these issues are significant and establish the plaintiff's status as a prevailing party on appeal. The fact that we reversed the trial court's $157,813.53 attorney fees award and remanded the matter for a hearing to determine the reasonable fees to which the plaintiff is entitled is significant from a monetary standpoint, but that does not diminish the significance of the plaintiff's successful defense of the compensatory damage award that he sought in bringing suit. For these reasons, we conclude that the reasonable attorney fees incurred by the plaintiff in defending against Sears's appeal in *Aliano II* could be properly awarded under section 10a(c) of the Consumer Fraud Act.

¶ 29    Finally, Transform argues that the trial court's attorney fees award was an abuse of discretion. It contends that the trial court failed to give due consideration to the factors to be used to determine the reasonableness of the attorney fees requested. Specifically, Transform asserts that there is nothing reasonable about awarding $267,470 for attorney fees in a "garden variety run-of-the-mill consumer fraud litigation" where (1) 89% of the services were billed at senior partner rates, (2) the attorney fee award that is 83,058 times (by our calculation 86,281 times) the actual damages, and (3) no reasonable attorney would spend in excess of 700 hours of time litigating a case over a $3.10 overcharge of sales tax. The plaintiff argues that there is no requirement that there must be proportionality between the compensatory damage award in an action pursuant to the Consumer Fraud Act and the attorney fees awarded. According to the

plaintiff, the public policy underlying the statute dictates that a successful plaintiff's counsel should be awarded the full amount of attorney fees and costs incurred. He also asserts that Sears tenaciously litigated this action, which required his attorneys to expend the number of hours necessary to respond. In support of that contention, the plaintiff notes that, in their defense of this action, the attorneys for Sears spent over two times the number of hours as his attorneys.

¶ 30 One of the purposes of the Consumer Fraud Act's fee-shifting provision is to provide consumers with access to legal assistance in the pursuit of their legal remedies under the statute. *Krautsack v. Anderson*, 223 Ill. 2d 541, 557 (2006). The fee-shifting provision of the statute also serves as an incentive for attorneys to represent consumers who have meritorious claims of limited actual damages. In many cases, the protections afforded by of the Consumer Fraud Act would be illusory absent an ability to recover attorney fees. *Id.* at 559. Although the Consumer Fraud Act is a remedial statute that is to be liberally construed to effectuate its purpose (*Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002)), attorney fees awarded pursuant to section 10a(c) must nonetheless be reasonable. The statute does not explain what constitutes a reasonable fee. The award of attorney fees to a prevailing party in an action pursuant to the Consumer Fraud Act is a matter left to the sound discretion of the trial court. *Krautsack*, 223 Ill. 2d at 554. The trial court's decision in the matter will not be disturbed on appeal unless that discretion has been abused. See *In re Estate of Callahan*, 144 Ill. 2d 32, 43-44 (1991).

¶ 31 The most useful starting point for determining the amount of a reasonable fee is the lodestar; that is, the product of the number of hours reasonably expended by counsel for the prevailing party, in this case the plaintiff, multiplied by a reasonable hourly rate. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986) (opinion of Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.) (citing *Hensley*, 461 U.S. at 433). After excising from the June 17, 2016, billing statement attached to the plaintiff's revised fee petition the time entries that it deemed lacking sufficient description, excessive, or unnecessary, the trial court set the lodestar at $267,470 and awarded the plaintiff 100% of that amount. Of that amount, $106,322 was the lodestar for legal services rendered on behalf of the plaintiff after January 1, 2014. The lodestar is presumed to be a reasonable fee. *Id.* However, calculation of the lodestar does not end the inquiry. *Hensley*, 461 U.S. at 434. There remain other factors for consideration that may lead to an adjustment of the fee upward or downward. *Id.* Those factors include, but are not limited to, (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances, (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Consumer Fraud Act, and (5) the relative merits of the parties' positions. *Krautsack*, 223 Ill. 2d at 554. Other factors for consideration include the novelty and difficulty of the issues involved, the skill required to perform the legal services properly, and the amount involved, and the result obtained. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (cited as authority in *Hensley*, 461 U.S. at 429-30).

¶ 32 The record in this case fails to reflect that, in awarding attorney fees equal to 100% of the lodestar, the trial court considered a number of relevant factors. As the trial court found in its order of October 6, 2014, "no bad faith on the part of Sears was shown" at trial. We note also that, 14 months after the trial court made its attorney fees award, Sears filed for bankruptcy.

Further, the plaintiff's action was for his benefit solely and did not benefit any class of consumers, nor did it resolve any significant legal issue regarding the Consumer Fraud Act. As stated by the plaintiff's own attorney, this action amounted to "garden variety run-of-the-mill consumer fraud litigation." There was nothing novel about the case. And although the trial court correctly found that the attorney fees awarded need not be proportionate to the amount of actual damages recovered, the amount of damages recovered by a plaintiff is nonetheless relevant to the amount of attorney fees awarded. *City of Riverside*, 477 U.S. at 574.

¶ 33    " ' "[B]illing judgment" is an important component in fee setting. *** Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.' " (Emphases in original.) *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*)). This is a proposition that the trial court recognized in its order of August 25, 2017. In enacting the fee-shifting provision of section 10a(c), the legislature certainly did not intend that the statute produce a windfall for attorneys; the fees awarded must be reasonable. In this case, the plaintiff won a $3.10 compensatory damage judgment against Sears for a single violation of the Consumer Fraud Act and ultimately sought $335,971 in attorney fees for 705.8 hours of legal services. We find it hard to understand how any attorney can be said to have exercised "billing judgment" in spending such a large amount of time on a case that, from the very beginning, involved a maximum of $3.10 in actual damages. However, in considering an argument that a fee award is excessive, the trial court should consider whether a party chose to aggressively litigate the case. *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 74; *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 106. The plaintiff argues that it was the tenacity of Sears's defense that required his attorneys to expend the number of hours necessary to respond. For its part, Transform argues that it was the plaintiff who was responsible for the inordinate expenditure of time by both sides. It contends that, after Sears offered to settle the action for $1000, the plaintiff demanded $95,538 for attorney fees and costs at a point in time when his attorneys had spent less than 5 hours prosecuting his individual claim. According to Transform, the plaintiff was prosecuting a $3.10 claim, but Sears was defending an action for $95,541.10. We cannot tell from the record in this case which argument is accurate. What we do know is that the trial court should have resolved the matter before it awarded the plaintiff attorney fees equal to 86,281 times the compensatory damage award. If, as the plaintiff asserts, the inordinate expenditure of time that his attorneys expended in prosecuting his claim was the result of militant defense tactics on the part of Sears, an award of attorney fees grossly disproportionate to the compensatory damage award may well be reasonable. See *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 74; *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 106. If, on the other hand, as Transform argues, it was the plaintiff's unjustified demand for excessive attorney fees that was responsible for the inordinate expenditure of time, then a significant downward adjustment of the lodestar would be in order. In any event, the matter must be resolved. Consequently, we vacate the $106,322 of attorney fees awarded by the trial court for legal services rendered on behalf of the plaintiff after January 1, 2014, and remand this matter to the circuit court to award the plaintiff reasonable attorney fees for post-January 1, 2014, legal services rendered on his behalf consistent with the opinions expressed herein.

¶ 34    Reversed in part, vacated in part, and remanded.